UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JABAR AZAMI, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   No. 14 C 2592 |
| v. | ) |
| | )   Judge Sara L. Ellis |
| VILLAGE OF WILMETTE, WILMETTE | ) |
| POLICE OFFICER #523 Sgt. TRAGE, | ) |
| WILMETTE POLICE OFFICER #541 | ) |
| SWITHIN, WILMETTE POLICE OFFICER | ) |
| #553 STENGER, WILMETTE POLICE | ) |
| OFFICER #556 SPARKS, WILMETTE | ) |
| POLICE OFFICER #564 HANDRICK, | ) |
| | ) |
|     Defendants. | ) |

## OPINION AND ORDER

After Plaintiff Jabar Azami called 911, threatening to kill himself, Wilmette police officers responded to his home and restrained him, in the process of bringing him to the hospital for a mental health evaluation. He brings this civil rights action against Defendants Village of Wilmette and the Wilmette police officers—Sergeant Trage, Officer Swithin, Officer Stenger, Officer Sparks, and Officer Handrick (collectively, the "Defendant Officers")—for an injury Azami suffered allegedly at the Defendant Officers' hands while they were restraining him. Azami brings claims against the Defendant Officers for excessive force and failure to intervene pursuant to 42 U.S.C. § 1983 and state law battery. He also contends that they engaged in a conspiracy. Finally, Azami seeks to hold the Village of Wilmette liable for all claims based on an indemnification theory and for the state law claims based on *respondeat superior*. Defendants have moved for summary judgment. Because there is a disputed question of fact as to the degree of force used, the Court denies summary judgment on the excessive force and failure to intervene

claims as to all but Officers Stenger and Sparks. With regard to these officers, there is no evidence that they participated in or had the ability to prevent any alleged use of force; the Court grants summary judgment in their favor. Tort immunity shields the Defendant Officers from Azami's battery claims. Because no underlying state law claims remain, the Court enters judgment for the Village of Wilmette on Azami's *respondeat superior* claim. Finally, because Azami has not introduced any evidence to support his conspiracy allegations, he may not further pursue that theory at trial.

## BACKGROUND[1]

On August 9, 2013 at around 12:32 a.m., the Village of Wilmette 911 dispatcher received a call from Azami, who was calling from his house at 530 Lawler Avenue in Wilmette, Illinois. In the call, Azami, who was intoxicated, stated "I want to go to the hospital before I kill myself," repeating variations of that line throughout the call. Doc. 47 ¶ 6. Azami, who lived across the street from I-94, threatened to walk onto the highway and kill himself.

As a result of the call, Officers Handrick, Stenger, and Swithin, and Sergeant Trage went to Azami's house. The police report listed Officer Sparks as a responding officer as well, but this was an error and he was not present at the scene and has no personal knowledge of the incident. This was not the first time officers from the Wilmette Police Department visited

---

[1] The facts in this section are derived from the Joint Statement of Uncontested Material Facts, Doc. 47, and the facts included in Azami's response to Defendants' motion for summary judgment, Doc. 48, in accordance with this Court's summary judgment procedures. All facts are taken in the light most favorable to Azami, the non-movant. Azami submitted a response to the Joint Statement of Uncontested Material Facts, in which he contests the inclusion of some of these facts on the basis of foundation or hearsay, for example. Doc. 49. But Azami agreed to these statements as part of the Court's summary judgment procedures (hence the name "Joint Statement of Uncontested Material Facts"), initially disputing not the facts with which he now takes issue but instead others that the Court addressed prior to the filing of Defendants' motion for summary judgment. *See* Docs. 43, 45. Because Azami cannot now belatedly withdraw his agreement to these facts and the foundational basis for them—and his hearsay objections are meritless—the Court strikes his response to the Joint Statement of Uncontested Material Facts.

Azami's house. Trage previously responded to Azami's family's calls to police after Azami became highly intoxicated and threatened his mother, who wanted him taken to the hospital. Azami had also been hospitalized for attempted suicide on two previous occasions.

When the officers arrived on August 9, they found Azami walking across Lawler Avenue toward I-94. They could smell alcohol on him and believed him to be intoxicated based on his behavior. As they approached Azami, he stated he was going to run into the expressway and kill himself, all the while directing profanity at the officers. Based on his conduct and the dispatcher's report, the officers decided to take Azami to the hospital, placing him in handcuffs under custodial arrest. They instructed him to sit on the bumper of his brother's car, which was parked in the driveway, while they waited for an ambulance. Azami was uncooperative, requiring the officers to restrain him. Trage was to the left of Azami, Handrick was to the right, and Swithin was behind Azami. Azami claimed he could not sit on the bumper due to his polio, so the officers moved him to the side of the car, leaning him on the trunk while he continued to struggle with them.

At some point, Azami's sister, Fareshta, came out of the house to see what was happening. Trage approached her, gave her Azami's personal property, and told her that they were taking Azami to the hospital for an evaluation. Trage then returned to the car, where he also told Azami that officers were taking him to the hospital. According to Trage, Azami became further agitated, slamming his head into the rear corner of the back windshield of the car. Trage testified that he then tried to put his hand in front of Azami's head, but Azami's head slid through and Azami smacked his head again. According to Trage, this caused the rear windshield of the car to spider and Azami's chin to split open. But according to Fareshta, when she came out of the house, she saw Azami trying to speak to her while the officers smashed his face into

3

the back windshield of the car. She observed that the windshield was already broken and that Azami's face was already bloody at that point, however. Fareshta testified that an officer continued to smash Azami's face back into the windshield while telling him to keep quiet. Fareshta recalled screaming and asking the officers why they were treating her brother like that, and her brother stating that the officers hit him and beat him up. Trage testified that Fareshta would not have had a clear view of the interactions between Azami and the officers by the car.

Eventually, paramedics loaded Azami into an ambulance, where they had to restrain him with straps and handcuffs. Handrick accompanied Azami in the ambulance to Northshore University Hospital. At 1:25 a.m., hospital staff recorded his blood alcohol level as .283. Azami also tested positive for marijuana. His medical records note that he was "combative and uncooperative[,] screaming and shouting profanity[,] attempting to leave and threatening to hurt staff," which required him to be restrained. Doc. 47-8 at 1.

Azami does not have an independent recollection of calling 911 on August 9. He also does not have any independent recollection of any conversations he had with his family members on August 8 or 9, nor does he recall the incident in question aside from the fact that he was screaming at some point during it.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material

fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS[2]

### I. Excessive Force/Failure to Intervene Claims

Azami claims that he was subjected to excessive force when officers bashed his head into the back windshield of the car several times, causing his chin to split open. Although he does not specifically identify the officer whom he claims used excessive force, he alternatively claims that the named Defendant Officers are liable for failing to intervene in preventing the use of excessive force. Azami's excessive force claims are analyzed under the Fourth Amendment's objective reasonableness standard. *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016). Whether a defendant's actions were objectively reasonable must be considered in light of the totality of the circumstances, with the Court engaging in a "careful balanc[ing] of the nature and

---

[2] In their memorandum, Defendants also include a section addressing whether the Defendant Officers had probable cause to seize Azami and transport him to the hospital based on the dispatch report and his behavior when they arrived at his house. Although Azami's first amended complaint includes an allegation that he was unreasonably seized, Doc. 15 ¶ 9, he does not appear to be making a claim for unreasonable seizure, indeed agreeing in the Joint Statement of Uncontested Material Facts that his arrest was for custodial purposes to ensure that he did not hurt himself or the other officers on the scene, *see* Doc. 47 ¶ 16. Moreover, Azami does not address this portion of Defendants' memorandum in his response, focusing only on the use of force. The Court treats this as an implicit concession that Azami is not pursuing any claim for unreasonable seizure. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument results in waiver). Thus, the Court does not address Defendants' alternative argument on unreasonable seizure.

5

quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Chelios v. Heavener*, 520 F.3d 678, 689 (7th Cir. 2008) (citations omitted) (internal quotation marks omitted). "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the [seizure], the officer uses greater force than was reasonably necessary to effectuate the [seizure]." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012). The Court considers the specific circumstances of the seizure, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Reasonableness is evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "[S]ummary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010).

Here, the Defendant Officers argue that they are entitled to summary judgment because there is no evidence that they struck, beat, or injured Azami, as they maintain that their only contact with Azami was restraining him against the car and keeping him from further banging his head against the windshield. But the Defendant Officers' version of events ignores Fareshta's testimony, in which she claims to have seen an officer smashing Azami's face back on the windshield repeatedly when Azami tried speaking to her in an attempt to keep him quiet.[3] Fareshta's testimony creates a material issue of fact as to the amount of force used that the Court

---

[3] Although the Defendant Officers discuss the fact that their use of force to arrest and restrain Azami was allowable, the Court need not address any use of force outside of the alleged smashing of his face into the windshield, as this is the only conduct that Azami challenges. Azami does not contend that the officers acted unreasonably in handcuffing him, restraining him against the side of the car, or in placing him and restraining him on the ambulance gurney.

6

cannot resolve on summary judgment, for that would require a credibility determination. *Id.* (dispute about how much force was used is material because it "bears directly on whether that force was a reasonable response to the situation faced by the officer"); *Rikas v. Babusch*, No. 13-cv-2069, 2016 WL 344518, at *3 (N.D. Ill. Jan. 28, 2016) (finding a material factual dispute regarding the level of force applied in arresting the plaintiff, precluding summary judgment on excessive force claim).

Even so, the Defendant Officers appear to argue that any apparent force that Fareshta witnessed cannot amount to excessive force because Azami was actively resisting and combative, making their use of force reasonable. Indeed, "an officer will not be held liable if the circumstances under which the force was used evolved so rapidly that a reasonable officer would not have had time to recalibrate the reasonable quantum of force." *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 733 (7th Cir. 2015). But this is a question that the Court cannot resolve based on the competing versions presented by the parties. Although the Court acknowledges that there is evidence in the record that Azami was actively resisting, shouting profanities, and threatening to kill himself by walking onto the highway, Azami has at least raised a question as to whether the alleged force used to restrain him was proportionally appropriate to the threat he posed. *See Karkoszka v. Dart*, No. 13 C 1635, 2016 WL 164331, at *3 (N.D. Ill. Jan. 14, 2016) (finding disputed issue of fact on excessive force claim "despite Defendants' argument that Plaintiff created and perpetuated the situation requiring them to use force").

The Defendant Officers also argue that Azami's injury was self-inflicted and that Fareshta cannot identify how Azami's chin was injured, where she admits that she observed that Azami's face was already bloodied when she came outside. But these points are irrelevant because Azami need not demonstrate that he was harmed by the Defendant Officers' use of force

7

to hold them liable. *McAllister v. Price*, 615 F.3d 877, 882 (7th Cir. 2010) ("Injury is not an element of an excessive-force claim; rather, it is evidence of the degree of force imposed and the reasonableness of that force."); *Coleman v. City of Chicago*, No. 12 C 10061, 2015 WL 8601702, at *4 (N.D. Ill. Dec. 14, 2015) ("Plaintiff is not required to show that Mr. Coleman was harmed by the officer's use of force in order for Officer Kirkland to be liable."). Although Azami's damages may be minimal, the alleged lack of traceable injury does not mean that the Defendant Officers are not liable if Azami can prove that the amount of force used was unreasonable.

Finally, the Defendant Officers argue that Azami cannot establish that Stenger was personally involved in the alleged constitutional violation. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."). Specifically, they claim that Stenger was not involved in restraining Azami and that there is no evidence placing him near Azami at the time his chin injury occurred. Although Azami has not identified the specific officer who allegedly pushed his head into the windshield, an officer may be held accountable "both for his own use of excessive force on the plaintiff, as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers." *Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012). Moreover, Azami's case does not fail because he cannot identify the officer who used excessive force on him, as he is entitled to submit his case to the jury even without identifying that officer and may pursue the officers on a failure to intervene theory as well. *Id.* To establish liability based on failure to intervene, Azami must show that the officer (1) knew that another officer was using or about to

use excessive force, (2) had a realistic opportunity to stop the use of excessive force, and (3) failed to take reasonable steps to do so. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Azami does not respond to Stenger's argument that he cannot be held liable for excessive force or failure to intervene, effectively conceding the issue. *See Bonte*, 624 F.3d at 466. Moreover, although there is evidence that Stenger was dispatched to Azami's house, that is the extent of the evidence in the record connecting Stenger to the incident. Unlike with Trager, Swithin, and Handrick, who are at least identified as being close to Azami while he was being restrained near the car, no inference can be drawn that Stenger knew of the alleged use of force or had any realistic opportunity to stop its use. *See Yang*, 37 F.3d at 285. Thus, summary judgment is granted in Stenger's favor on the excessive force and failure to intervene claim asserted against him but denied as to Trager, Swithin, and Handrick.[4]

## II. Battery Claims

The Defendant Officers also move for summary judgment on Azami's battery claims, arguing that they are entitled to immunity under the Illinois Tort Immunity Act, or, alternatively, that they did not commit a battery. Specifically, they argue that section 2-201 of the Illinois Tort Immunity Act applies, which provides that "a public employee serving in a position involving the determination of police or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 Ill. Comp. Stat. 10/2-201. This section applies to the Defendant Officers' actions here because they made the decision to transport Azami for a medical evaluation and his arrest was custodial, as Azami admits, "to ensure that he gets to the hospital and does not hurt

---

[4] Similarly, although the parties only addressed the issue in their Joint Statement of Uncontested Material Facts, because Sparks appears to have been named in Azami's first amended complaint based only on the fact that his name was listed on the police report in error and all parties acknowledge that he was not present at the scene and has no personal knowledge of the incident at issue, the Court grants summary judgment for Sparks on the excessive force and failure to intervene claim asserted against him.

himself or the officers present." Doc. 49 ¶ 16. Such decisions are discretionary ones protected by section 2-201 immunity. *Fitzgerald v. Santoro*, 842 F. Supp. 2d 1064, 1071 (N.D. Ill. 2012) (section 2-201 immunity protected officers from battery claims where officers responded to plaintiff's calls to police department in which she made suicidal statements, causing officers to determine that plaintiff should be taken to the hospital for evaluation); *Reddick v. Bloomingdale Police Officers*, No. 96 C 1109, 1997 WL 441328, at *7 (N.D. Ill. July 30, 1997) ("Decisions to transport someone for medical evaluation and the proper method to transport patients to a hospital for evaluation are discretionary."). The immunity applies even despite Azami's argument that the Defendant Officers' conduct was excessive, which the Court reads to be a claim that they were engaged in willful and wanton conduct. This is because section 2-201 "immunizes defendants absolutely, even against claims of willful and wanton conduct." *Reddick*, 1997 WL 441328, at *7 (citing *In re Chicago Flood Litig.*, 680 N.E.2d 265, 176 Ill. 2d 179, 223 Ill. Dec. 532 (1997)). Thus, notwithstanding Fareshta's testimony and the fact that the Court has found a disputed issue of fact as to Azami's excessive force claim, the Defendant Officers are protected by section 2-201 with respect to the state law battery claims and the Court grants summary judgment in their favor on these claims.[5] And because the Defendant Officers are not liable on any of the state law claims, the Court also grants summary judgment to the Village of Wilmette on Azami's supplementary claim for *respondeat superior*. *See* 745 Ill. Comp. Stat. 10/2-109 (a public entity is not liable for the act of an employee if the employee is not liable).

---

[5] Because immunity applies, the Court need not address whether there is a disputed issue of fact as to whether a battery occurred. The Court notes, however, that Azami did not address this issue in his response, although his argument concerning excessive force could apply equally to his battery claims.

### III.    Conspiracy

Finally, although not explicitly pleaded as a claim, Azami has included conspiracy allegations in his first amended complaint, contending that the Defendant Officers agreed not to report each other or generate the required reports after they allegedly used excessive force on Azami. To establish conspiracy liability under § 1983, Azami must demonstrate that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).[6] Azami presents no evidence, circumstantial or otherwise, of an agreement among the Defendant Officers to use excessive force against him. Thus, to the extent Azami seeks to hold any of the Defendant Officers liable on a conspiracy theory, that avenue is foreclosed. *See id.* at 511 (circumstantial evidence of conspiracy cannot be speculative); *Wayne v. Kirk*, No. 13 C 8540, 2015 WL 5950900, at *3 (N.D. Ill. Oct. 13, 2015) (granting summary judgment on conspiracy claim where plaintiff did not present any evidence suggestive of an agreement among the officers).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [46] is granted in part and denied in part. The Court enters summary judgment for Defendant Stenger on Count III, for Defendant Sparks on Count IV, for Defendant Trage on Count VI, for Defendant Swithin on Count VII, for Defendant Stenger on Count VIII, for Defendant Sparks on Count IX, for Defendant Handrick on Count X, and for the Village of Wilmette on Count XII. Additionally,

---

[6] Although the state law battery counts have been dismissed, making the conspiracy allegations irrelevant under state law, for purposes of state law conspiracy, Azami would have to demonstrate "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007).

the Court enters summary judgment for the Defendant Officers on Azami's conspiracy allegations.

Dated: April 4, 2016

_____
SARA L. ELLIS
United States District Judge